# Green *v.* Simpson, Appellant.

*Will—Conversion—Life estate—Power of sale.*

1. A will which merely invests the executors with power to sell real estate and reinvest the proceeds thereof, in case a satisfactory sale of the property can be made, does not convert such real estate into personalty, until the sale has actually been made.

2. A devise, under such a will, to a son of "the use, occupancy, rents, issues and profits of all the estate, real and personal during his natural life," gives to the devisee the right to the possession of the real estate, until such time as the executors see fit to exercise their discretion to sell, and he can maintain ejectment to enforce that right.

*Adverse possession—Strip of land—Sidewalk—Evidence—Title.*

3. The mere fact that a person lays a stone pavement on a strip of land, plants shade trees thereon, and uses the strip as a sidewalk for over twenty-one years does not give him title to the land by adverse possession, if it appears that he used the sidewalk in question in common with all other people in the community for the purpose of reaching a railroad station. All that he has acquired by the twenty-one years' lease, is an easement of a right of way, and in the enjoyment of this easement he is entitled to protection.

4. The possession which tolls the right of entry must not only be notorious, but adverse, hostile and exclusive as against the owner. The occupant must claim against all persons, and in subserviency to none. In other words, he must claim and act as if the land belonged to him.

Argued Oct. 27, 1911. Appeal, No. 203, Oct. T., 1911, by defendant, from judgment of C. P. Huntingdon Co., Feb. T., 1911, No. 4, on verdict for plaintiff in case of Edward H. Green v. G. W. Simpson. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Ejectment for a strip of land in the borough of Millcreek. Before WOODS, P. J.

The facts are stated in the opinion of the Superior Court.

At the trial the jury returned a verdict in favor of defendant. Subsequently the court entered judgment for plaintiff non obstante veredicto.

*Error assigned* was in entering judgment for plaintiff non obstante veredicto.

*Thomas F. Bailey,* with him *John T. Wilson,* for appellant, cited as to appellant's title to the fee by limitation: Llewellyn v. Buechley, 198 Pa. 642; Olewine v. Messmore, 128 Pa. 470; Boyer v. Lengel, 224 Pa. 357; Lehigh Valley Coal Co. v. Beaver Lumber Co., 203 Pa. 544; McCombs v. Rowan, 59 Pa. 414.

Cited as to plaintiff's right of possession as against the defendant's easement: Allison v. Wilson, 13 S. & R. 330; Irwin v. Patchen, 164 Pa. 51; Rauch's Est., 21 Pa. Superior Ct. 60; Severns's Est., 211 Pa. 65; Fahnestock v. Fahnestock, 152 Pa. 56.

*James S. Woods,* with him *J. R. Simpson* and *W. B. Simpson,* for appellee, cited as to adverse possession: Deppen v. Bogar, 7 Pa. Superior Ct. 434; Groft v. Weakland, 34 Pa. 304; Hillside Coal & Iron Co. v. Zeigler, 218 Pa. 319; Shroder v. Breneman, 21 Pa. 225; Long v. Mast, 11 Pa. 189; Brolaskey v. McClain, 61 Pa. 146; McArthur v. Kitchen, 77 Pa. 62; Pierce v. Barney, 209 Pa. 132; Hads v. Tiernan, 213 Pa. 44; Waid v. Cemetery Assn., 18 Pa. Dist. Rep. 989; Citizens' Electric Co. v. Davis, 44 Pa. Superior Ct. 138; Com. v. Bierly, 37 Pa. Superior Ct. 496; Wickham v. Sutton, 33 Pa. Superior Ct. 368; Tustin v. Sammons, 23 Pa. Superior Ct. 175; Weisfield v. Beale, 44 Pa. Superior Ct. 391.

Cited as to plaintiff's title: Irwin v. Patchen, 164 Pa. 51.

OPINION BY PORTER, J., March 1, 1912:

The plaintiff brought an action of ejectment against defendant for a lot of ground in the borough of Mill Creek, Huntingdon county, fronting fifty feet on the public road leading from Huntingdon to Mount Union, and extending back in a southerly direction to the line of the Pennsylvania Railroad Company, and bounded on the west by land of the defendant and on the east by an open way

leading from said public road to the lands of the Pennsylvania Railroad Company. The defendant filed a disclaimer of the ownership and possession of all of the lot in question except a narrow strip along the west side thereof, upon which he had for years maintained a stone walk, extending from the Huntingdon and Mount Union public road to the line of the Pennsylvania Railroad. The defendant, in his history of the case, thus states his view of the question of fact as developed by the presentation of the evidence at the trial: "At the trial of the case it appearing that his paper title to the ground in dispute was not clear the appellant (defendant) rested his case upon his title by adverse possession, and the question was then narrowed to the single one of which one of these parties had the right at the time this suit was brought to the strip of ground covered by the walk, up to the shade trees." The jury found that the plaintiff had maintained this sidewalk for more than twenty-one years prior to the commencement of the action. The court below was of opinion that the defendant had failed to produce any evidence of such an adverse, hostile and exclusive possession of this strip of ground as is necessary, under the statute, to give title in fee simple to the land; that the evidence as to the maintenance of the sidewalk indicated nothing more than the assertion of a right to an easement, and if the walk had been maintained for twenty-one years, the right thus acquired by the defendant, would be merely a right of way over the strip of ground, appurtenant to his adjoining property. The plaintiff obtained a judgment for the strip of land in dispute, "subject to the right of the defendant to exercise his prescriptive right thereon to maintain a sidewalk as he has heretofore done." The defendant appeals from this judgment.

The evidence at the trial clearly demonstrated that the record title to the strip of land in question was in the plaintiff, and that the only right therein possessed by the defendant was such as he held by virtue of adverse possession. The defendant presents on this appeal two con-

tentions, the first of which is that, even if the defendant had no right in the land, the evidence disclosed that the plaintiff was not entitled to the possession thereof. This contention is based on the provisions of the will of Eliza H. Green, under which the plaintiff claimed. The assertion of the defendant is that the said will devised to the plaintiff only the rents, issues and profits of the land, and that the other provisions of the will worked a conversion of the land into personalty. The will devised to the plaintiff "the use, occupancy, rents, issues and profits of all my estate, real and personal or mixed during his natural life." The provision which defendant asserts worked a conversion of the land was in these words: "It is my will and I direct my executors that if a satisfactory sale of my property, in whole or in part, can be made, that they have and are hereby given the power to make such sale or sales and make conveyances of the same in fee simple and reinvest the proceeds thereof." It is well settled that, in order to work a conversion, there must be either: "1. A positive direction to sell; or, 2. An absolute necessity to sell in order to execute the will; or, 3. Such a blending of real and personal estate by the testator in his will, as to clearly show that he intended to create a fund out of both real and personal estate, and to bequeath said fund as money:" Hunt's and Lehman's Appeals, 105 Pa. 128. The provision empowering the executors of Eliza H. Green to sell was not absolute. It merely invested the executors with power to sell and reinvest the proceeds, in case a satisfactory sale of the property could be made, a contingency which might not occur. The executors were not required to sell, even if an advantageous opportunity presented itself. This provision of the will merely invested the executors with a power which they might or might not exercise, according to their discretion. There was no absolute necessity to sell in order to execute the will, nor was there such a blending of the real and personal estate by the testator in her will, as to indicate that she intended to create a fund out of both personal and real estate, and to bequeath said

fund as money. The contingency mentioned in the will never transpired, the executors never exercised their discretion to sell this piece of land, and hence there was no conversion under the will: Irwin et al. v. Patchen et al., 164 Pa. 51. The devise to the plaintiff of "the use, occupancy, rents, issues and profits of all the estate, real and personal during his natural life," gave to him the right to possession of the real estate, until such time as the executors saw fit to exercise their discretion to sell, and he could maintain ejectment to enforce that right.

The second contention of the appellant is that the evidence as to his possession was such as to sustain a finding that he had acquired title, under the statute, by adverse user, to the fee in the strip of ground. The entire lot of land for which the action was brought had long been uninclosed and all persons who desired so to do passed over it at will. It had formerly been part of a furnace property and had been used as a private way giving access to the furnace, and the furnace having been abandoned and the use of the ground for that purpose discontinued, the lot remained uninclosed. The station of the Pennsylvania Railroad being near, many persons availed themselves of this lot as a means of access to the station from the turnpike. This was the condition of affairs when, in 1881, the defendant became the owner of the lot of land bounding this strip on the westward, and since that time he has used the lot which he then acquired as a residence. The line between the lot in question and the lot upon which the residence of the defendant is situated has been during nearly all the period, since 1881 marked by either a fence or a hedge, and the defendant used the lot to the west of that line so marked for a residence, as his own private property. The defendant asserts that he has used the strip of ground now in question since 1881, but all the evidence indicates, and indicates only, that he used it for a limited and well-defined purpose. The defendant himself testified as to the character of the use which he had made of the land in question. The Pennsylvania Railroad had,

for the purpose of obtaining material, made an excavation at that end of the strip of ground next the railroad, and when, in 1881, a store building was about to be erected on the opposite side of the turnpike and during the excavation for the cellar the man who was hauling the material out "did not know what to do with it and my brother came along and suggested I might arrange with him to haul the dirt over and put it along this embankment and level up the embankment and give me a chance for a walk." This is the defendant's own statement as to what was the first thing done by him on the property and the purpose which his act indicated. He later improved this walk by laying upon it a stone sidewalk and ornamented it by planting trees at its outer limit, on its east side. This walk extended through from the turnpike to the line of the Pennsylvania Railroad and on its west side was the fence or hedge which marked the line of the defendant's private property, used by him as a residence. The stone walk was similar in character to that which he maintained upon the public turnpike road in front of his house; he used one in the same way that he used the other. His testimony and all the testimony in the case clearly indicates that all other persons who desired to do so used this walk, in passing from the turnpike road to the Pennsylvania railroad station, exactly as they would have used any public sidewalk. The defendant maintained the sidewalk, just as an owner may be compelled to maintain a sidewalk upon a public street, but so far as the use of the land was concerned he used it in common with all other people in the community. There was not in the case a scintilla of evidence from which a jury should have been permitted to find that this defendant had ever done anything which indicated the assertion of a right to the exclusive use of this land or adverse to the right of any other person to use it, until September, 1909, at which time he served upon this plaintiff a notice in the following words: "You are hereby notified not to trespass by walking or in any way using my sidewalks in the Borough of Mill Creek

under penalty of law for trespassing." This was the first act of this defendant which indicated that he was asserting any right to exclude the plaintiff from the property, and it may be observed that he in this notice asserted the right to also exclude the plaintiff from walking upon any other sidewalk in front of defendant's property in the borough. The defendant admitted in his testimony that his reason for serving this notice was because the plaintiff had sued him for trespassing upon the other part of the lot in question. The record of that action of trespass disclosed that in that action this defendant had asserted that the whole lot was a public highway. The defendant in December, 1909, removed the hedge which had formerly marked the line between this strip of ground and his residence lot and replanted it on the eastern side of the sidewalk; this was the first time that he had ever attempted to exclude anybody or done anything which indicated the assertion of a right to the exclusive possession of the land. The plaintiff then promptly brought this action of ejectment. "The possession which tolls the right of entry, must not only be notorious, but adverse, hostile, and exclusive, as against the owner. The occupant must claim against all persons, and in subserviency to none. In other words, must claim and act as if the land belonged to him:" Long v. Mast, 11 Pa. 189. There was no evidence that the defendant had ever held adverse and exclusive possession of this strip of ground prior to December, 1909, and it would have been error for the court below to permit him to recover in ejectment upon the theory that he had, under the statute, acquired title to the fee by adverse possession: Hillside Coal & Iron Co. v. Zeigler, 218 Pa. 319; Shroder v. Breneman, 21 Pa. 225. The evidence established that the defendant had for more than twenty-one years maintained a walk upon the strip of ground and used it as a way appurtenant to his adjoining lot, and the jury having so found the facts, he was entitled to have the prescriptive right which he had thus acquired protected; the court did so mold the judgment as to protect that right, which action

was free from error: Costello v. Harris, 162 Pa. 397; Deppen v. Bogar, 7 Pa. Superior Ct. 434; Brolaskey v. McClain, 61 Pa. 146.   The judgment in this case protects the right to an easement, for a right of way, which the defendant has acquired in the land in dispute, and there was no evidence in the case which warranted more than this.

The judgment is affirmed.